# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GERALD S. LEPRE, JR.        :

          :

       **Plaintiff**       :

     **v.**            :     **3:13-CV-796**

                 :     **(JUDGE MARIANI)**

PAUL LUKUS, *et al.*,       :

                 :

       **Defendants**   :

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Magistrate Judge Mehalchick's Report & Recommendation

("R&R") (Doc. 127) recommending this Court grant the Motions to Dismiss the Amended

Complaint filed by Defendant Paul Lukus, Defendant Forest City Police Department

("FCPD"), and Susquehanna County Defendants[1] (Doc. 106, Doc. 107, Doc. 122). For the

reasons set forth below, the Court will adopt the R&R and grant the motions to dismiss.

### II. Procedural History and Factual Background

Plaintiff originally filed suit on March 2, 2012 in the Western District of Pennsylvania.

(Doc. 1-1). In short, his Complaint alleged that the various defendants had conspired to

deny him access to and custody of his minor child, MCL, and to garnish his wages after

improperly entering a child support order against him, all without providing him with

---

[1] Susquehanna County Defendants are comprised of Defendants Adamec, Collins, Cordner, Darmofal, Landes, Norris, Sellers, Snow, Strope, Taylor, Washko, and the Susquehanna County Children and Youth Services.

adequate post-deprivation hearings in violation of his procedural due process, substantive due process, and equal protection rights.

In a Memorandum Opinion and Order dated March 26, 2013, Judge Cercone dismissed certain defendants on judicial and Eleventh Amendment immunity grounds. (Doc. 96, Doc. 97). He also granted Plaintiff leave to file an Amended Complaint as to Defendants Paul and Christine Lukus, Shifler-Ferraro, and the FCPD to establish *Monell* liability,[2] and he then transferred the case to the Middle District of Pennsylvania. (*Id.*).

After the case was transferred to the Middle District of Pennsylvania and assigned to the undersigned judge, Plaintiff filed an Amended Complaint on June 26, 2013. (Doc. 104). Soon thereafter, Defendants filed renewed Motions to Dismiss. (Doc. 106, Doc. 107, Doc. 122). The undersigned referred the case to Magistrate Judge Karoline Mehalchick who issued an R&R on December 23, 2013 (Doc. 127) recommending that the Court grant the motions to dismiss. Judge Mehalchick based her recommendations to dismiss on two grounds: (1) following leave to amend, Plaintiff still had not articulated what actions Defendants Lukus and FCPD had taken against him as part of an identifiable state custom or policy sufficient to establish a *Monell* claim, and (2) the *Rooker-Feldman* doctrine

---

[2] In his Memorandum Opinion, Judge Cercone noted that though "Plaintiff argues in his submissions that Paul Lukus as Chief of Police and Forest City Police Department threatened to imprison him if he attempted to come near MCL," he failed to "state in his complaint with any factual clarity the actions, if any, of the particular members of the Forest City Police Department that were taken against him." (Doc. 96, at 12). Judge Cercone concluded that "the alleged policy is not sufficiently identified. Paul Lukus and the Forest City Police Department have been linked together by plaintiff. As chief of police, Paul Lukus may have had the authority or ability to establish official policy or a custom or practice of the police force." As such, he granted Plaintiff leave to amend his complaint. (*Id.* at 13-14).

prevented this Court from reviewing previous state court rulings adverse to Plaintiff on the matters of child support and custody of MCL.

In his Amended Complaint, Plaintiff alleges the following:

Plaintiff is the biological father of MCL, and Defendant Shifler-Ferraro is MCL's biological mother. (Am. Compl., Doc. 104, at ¶¶ 23, 24). Defendant Paul Lukus is the paternal step-grandfather of MCL, and Defendant Christine Lukus is her paternal grandmother. (Id. at ¶¶ 25, 26). Mr. Lukus is also the Chief of Police of Defendant FCPD. (Id. at ¶ 6).

"On December 27, 2006, a custody order was entered awarding both Plaintiff and Defendant Desiree Lee Shifler-Ferraro shared custody of the child M.C.L.; wherein, Defendant Desiree Lee Shifler-Ferraro was to have primary physical custody and Plaintiff was to have partial custody with the right to liberal visitation." (Id. at ¶ 28).

Despite his partial custody rights, Defendant Shifler-Ferraro repeatedly denied Plaintiff visitation with MCL and on or about November 22, 2010, "relinquished her primary custodial rights" to Lukus Defendants and the FCPD, as well. (Id. at ¶¶ 28-30, 32). Upon learning that Lukus Defendants "had secured or maintained primary physical custody" of MCL, Plaintiff demanded that Lukus Defendants and the FCPD release MCL to his custody in November and December 2010, but Lukus Defendants and the FCPD refused. (Id. at ¶¶ 34-38).

3

Plaintiff immediately filed a child custody modification action "seeking primary physical custody of his child M.C.L. in the Court of Common Pleas of Susquehanna County." (*Id.* at ¶ 39). Almost simultaneously, in January 2011, Lukus Defendants and the FCPD "filed their action for child support for maintenance and support of" MCL. (*Id.* at ¶ 40). Lukus Defendants based their action on 23 PA. CONS. STAT. § 4341 which provides that "[a]ny person caring for a child shall have standing to commence or continue an action for support of that child regardless of whether a court order has been issued granting that person custody of the child." (*Id.*). Plaintiff is challenging the constitutionality of this statute.

Specifically, Plaintiff claims that he "did not receive a full and fair fact[ual] hearing regarding custody, child support or any valid appeal process from the Commonwealth of Pennsylvania to date through no fault of his own. . . . [E]ach hearing offered was a complete or total sham or such decisions were based on cronyism." (*Id.* at ¶ 42). Furthermore, although FCPD and Lukus Defendants "filed no action for child custody . . . they were awarded the same by the state and the action for child support is in fact final after several bogus hearings were held." (*Id.* at ¶ 44).

Plaintiff identified the "policy, custom, practice or usage violated by" FCPD and Lukus Defendants as "the fact that policing agencies in the United States defer child custody matters to a civil forum as opposed to involving themselves in the same unless and in cases of child abuse which they refer to Children and Youth Services." (*Id.* at ¶ 52).

4

In response to the R&R, Plaintiff filed Objections (Doc. 128) and a Supplement to his

Objection (Doc. 129). In his Objections, he argues that Judge Mehalchick failed to recognize

that he did plead a custom or policy on behalf of FCPD which is sufficient to establish a

Monell claim; that is, "the fact that policing agencies refer child custody matters to a civil

forum or a branch of state government as opposed to personally involving themselves in

such matters." (Objections at ¶ 5).

Second, he argues that the "unlawful child snatching" of MCL by Lukus Defendants

occurred "on or about November 22, 2010, without any hearing," a date which he accuses

Judge Mehalchick of neglecting to include in her R&R. (Id. at ¶ 4). Lukus Defendants

supposedly obtained custody of MCL despite Plaintiff having never been "found to be an

unfit parent by any court of competent jurisdiction." (Id. at ¶ 5). Plaintiff's "child was taken by

state actors with no hearing, Lepre was threatened with arrest and imprisonment by state

actors, for seeking custody of his child and furthermore, Lepre's wages and property were

garnished as a result thereof, by state actors in their contrived conspiracy against him." (Id.).

Finally, Plaintiff argues that "he raised a direct challenge to the constitutionality of" 23

PA. CONS. STAT. § 4341(b), which Judge Mehalchick failed to address. (Supplement at ¶ 2).

## III. Analysis

### Standard on Report and Recommendation

A district court may "designate a magistrate judge to conduct hearings, including

evidentiary hearings, and to submit to a judge of the court proposed findings of fact and

recommendations for the disposition" of certain matters pending before the court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report & Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1); *see also Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); Local Rule of the Middle District of Pennsylvania 72.3.

### Standard on Motion to Dismiss

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio–Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114,118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those

6

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n. 14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is

entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

This "plausibility" determination will be a "context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id.*

"Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks

subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar*

*Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

### Claims against Defendant Paul Lukus and the Forest City Police Department

To establish a *prima facie* case under 42 U.S.C. § 1983, a plaintiff must demonstrate

that: (1) he was deprived of a federal right; and (2) the person who deprived him of that right

7

acted under color of state law. *Burrella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir. 2007). Section 1983 is not an independent source of substantive rights, but merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Kopec v. Tate*, 361 F.3d 772, 775–76 (3d Cir. 2004).

## A. Monell Liability

First, Plaintiff argues that he did identify a custom, practice, or policy which would establish *Monell* liability for the FCPD and Paul Lukus, as an agent of FCPD. Plaintiff identified the "policy, custom, practice or usage violated by" FCPD and Paul Lukus as "the fact that policing agencies in the United States defer child custody matters to a civil forum as opposed to involving themselves in the same unless and in cases of child abuse which they refer to Children and Youth Services." (Am. Compl. at ¶ 52).

As Judge Mehalchick correctly noted, liability may not be imposed solely on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 69, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. "In addition to proving that an *unlawful* policy or custom existed, a plaintiff also bears the burden of proving that such a policy or custom was the proximate cause of the injuries suffered." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007) (emphasis added).

8

In other words, simply identifying an existing custom, policy, or practice is insufficient

to establish a *Monell* claim; a plaintiff must identify an *unlawful* custom, policy, or practice

that causes a violation of his constitutional rights. As the Third Circuit recently stated:

> These allegations are insufficient to state a claim under *Iqbal* because they
> fail to contain sufficient factual matter to make it plausible on the face of the
> complaint that defendants are responsible for *a policy or custom that violated*
> *the Keans' constitutional rights.* Although we agree with the District Court's
> statement that Kean may have been treated poorly by officers, we also agree
> that the Keans have failed to allege any facts indicating that the municipalities
> took any action in accordance with an *unlawful* policy, practice, or custom
> under *Monell.*

*Kean v. Henry*, 523 F. App'x 879, 882 (3d Cir. 2013) (emphasis added).

It may very well be true that it is FCPD's policy to "defer child custody matters to a

civil forum as opposed to involving [itself] in the same unless and in cases of child abuse

which [it refers] to Children and Youth Services." Nevertheless, Plaintiff has not shown how

such a policy is unlawful or how it violates his constitutional rights. Therefore, the Court will

overrule Plaintiff's Objections and adopt the portion of the R&R that recommends dismissing

Paul Lukus and the FCPD on *Monell* grounds.

## B. *Rooker-Feldman*

Second, Plaintiff challenges Judge Mehalchick's determination that *Rooker-Feldman*

applies to this case and deprives this Court of subject-matter jurisdiction. "The *Rooker-*

*Feldman* doctrine provides that federal courts lack subject matter jurisdiction to review final

adjudications of a state's highest court or to evaluate constitutional claims that are

inextricably intertwined with the state court's decision in a judicial proceeding." *Gary v.*

9

*Braddock Cemetery*, 517 F.3d 195, 206 (3d Cir. 2008) (internal citations and quotation marks omitted). The Third Circuit has "interpreted the doctrine to encompass final decisions of lower state courts as well." *E.B. v. Verniero*, 119 F.3d 1077, 1090 (3d Cir. 1997). "The doctrine, in essence, prohibits federal courts from exercising jurisdiction over cases that are the functional equivalent of an appeal from a state court judgment." *Gary*, 517 F.3d at 206.

Judge Mehalchick interpreted Plaintiff's Amended Complaint to seek relief in the form of a review of the state court custody and child support determinations. To that end, the public filings[3] in the state court proceedings make clear that *Rooker-Feldman* applies, and this Court is precluded from reviewing the propriety of those decisions.

Plaintiff alleges, and the public record corroborates, that on or around November 22, 2010, Defendant Shifler-Ferraro "relinquished her primary custodial rights" to Defendants Paul and Christine Lukus. (Am. Compl. at ¶¶ 28-30, 32; *see also G.S.L., Jr. v. D.S.L.*, No. 1486 MDA 2012 (Pa. Super. Ct. Mar. 6, 2013)[4]). In an opinion dated September 4, 2012, the trial judge submitted an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925 which stated the following:

---

[3] The Court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). The docket and documents in Plaintiff's child custody and child support cases are public records of which this Court can take judicial notice. *See Wilson v. McVey*, 579 F. Supp. 2d 685, 688 (M.D. Pa. 2008) (taking judicial notice of court docket); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (stating that a court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity").

[4] The Pennsylvania Superior Court affirmed the trial court's opinion in every respect, adopted the findings of fact, and attached the trial court's opinion to its own. Therefore, the findings of fact that the undersigned refers to were made by the trial court and affirmed by the Superior Court.

10

From the date of the 2006 Custody Order, the docket is completely silent until Appellant [Plaintiff] filed the underlying Motion on January 6, 2011, on the heels of Appellant's mother raising claims for child support. In his Motion to Modify Existing Custody Arrangement, Father seeks primary physical custody. A hearing on Appellant's Motion was heard by this Court on July 9, 2012, in which both Mother and Father appeared *pro se*.

*G.S.L., Jr. v. D.S.L.*, No. 1486 MDA 2012, at 2 (Susquehanna Cnty. Sept. 4, 2012). In an

opinion dated July 16, 2012, the trial court made the following pertinent findings of fact:

4. There currently exists a Custody Order dated December 27, 2006 which provides that Mother shall have primary physical custody of ML with partial custody and visitation granted to the Father on alternating weekends and certain holidays with two (2) weeks of vacation with the Father during summer vacation.

6.a. Father has had no physical custody or visitation with ML since 2006.

17. The Custody Order of December 2006 is the operative document which is subject to this Petition to Modify.

18. Following the filing of the Petition to Modify, the Court Order of June 28, 2011 established a reunification plan that provided for joint counseling with Father and daughter.

19. Father has failed to participate in such counseling with ML.

20. Despite the fact that the paternal grandparents are the caretakers of the child, Father has had minimal contact with ML and does not have a good relationship with his parents.

23. Father has failed to perform parental duties related to ML for the vast majority of her life as a result of (1) being incarcerated for in excess of 5 years shortly after ML was born and (2) having had virtually no contact with her since December 2006.

24. Father's Petition to Modify Custody was filed in January 2011 at the same time that the paternal grandparents were seeking child support to assist in providing for the needs of ML.

25.c. Father has basically abandoned the child for the past 6 years.

25.g. Father opposed the opportunity of the Court to hear the preference of the child based upon the fact that given his absence from the child's life for the past 5 ½ years, the child's expressed preference would be prejudicial to Father.[5]

*G.S.L. v. D.L.S.*, No. 1999-581 CP, at 6-10 (Susquehanna Cnty. July 16, 2012). The trial

judge also noted that

> Despite having primary physical custody of ML since December 2006, Mother allows the paternal grandparents to exercise physical custody over the minor child due to the deteriorating relationship between Mother and the minor child. This arrangement of custody to the paternal grandparents was made as a result of the request of the minor child and the agreement of the Mother in 2009. The minor child had a developing marijuana problem at approximately the time of the transfer to the grandparents' custody. The paternal grandfather, P.L., was also a Police Officer and he ended up having to cite the minor child for Possession of Marijuana. That action appears to have had a significant impact on the minor daughter's life. Her school grades have turned around significantly, she is doing much better educationally and socially and has worked her way out of the drug problem through counseling and a Consent Decree in the Juvenile Delinquency proceeding. Her school attendance and grades have improved substantially.
>
> . . .
>
> The child has grown up in Northeastern Pennsylvania for her entire life. She has extended family in that area including her Mother, maternal great-grandmother, maternal grandfather, uncles and a four (4) year old half-brother with whom she is great friends. In addition, her extended family includes the paternal grandparents and their family.
>
> Even though the minor daughter resides with the paternal grandparents, she has regular visitation with her Mother and half-brother multiple times a week.

---

[5] At the time of the hearing, MCL was 16 ½ years old. *Id*. at 1. MCL was born in January 1996. *G.S.L., Jr. v. D.S.L.*, No. 1486 MDA 2012, at 1 (Susquehanna Cnty. Sept. 4, 2012). As such, if she has not already attained the age of majority, she will before the month's end.

12

Father, in filing his Motion to Modify Custody, is seeking to obtain primary physical custody of ML and Court approval to relocate her to Pittsburgh, Pennsylvania. Father relocated to Pittsburgh in 2009 and has continued to reside there since that date.

*Id.* at 2-3. The trial court also noted "that the Father is seeking a change in the primary physical custody of his minor daughter and simultaneously requesting relocation from Northeastern Pennsylvania to Pittsburgh but Father has not pled nor presented any evidence in support of his request for relocation." *Id.* at 5.

Based on the findings of fact, the trial court made the following conclusions of law:

6. Mother's decision to enter into a temporary custody arrangement with the paternal grandparents allowing the grandparents to provide for the custodial needs of ML evidences a recognition of the needs of ML and a willingness to make appropriate adjustments in her own life to meet those needs.

8. The best needs of the minor child provide that primary physical custody of ML shall be granted to the Mother, D.S., with the right to extend temporary physical custody to the paternal grandparents who presently provide for the needs of the child.

9. Partial physical custody of ML shall be granted to the Plaintiff, G.L., provided Father participates in and completes reunification counseling with his minor daughter through appropriate counseling in the Forest City area.

*Id.* at 13-14.

On Lukus Defendants' Complaint for Support filed against Plaintiff on January 21, 2011, the same panel of judges on the Superior Court affirmed the trial court's award of monthly child support in the amount of $450. *C.L. v. G.S.L., Jr.*, No. 769 MDA 2012, No. 1578 MDA 2012 (Pa. Super. Ct. April 24, 2013). In addition to other matters (*see infra*), the

Superior Court affirmed the hearing Master's method of arriving at a monthly child support award of $450 and acknowledged that the hearing Master would have had the discretion to award a higher amount. *Id.* at 15-17. The Court also affirmed the trial court's wage garnishment order on various grounds, including Plaintiff's failure to file timely objections and the testimony of an employee from the Domestic Relations unit that Plaintiff owed arrearages. *Id.* at 21-22.

Therefore, to the extent that Plaintiff wishes this Court to revisit these Superior Court rulings, *Rooker-Feldman* prevents this Court from doing so, and the Court will overrule Plaintiff's Objections and adopt this portion of the R&R.

## C. Procedural and Substantive Due Process Claims

Nevertheless, in his Amended Complaint, Plaintiff claims that he "did not receive a full and fair fact[ual] hearing regarding custody, child support or any valid appeal process from the Commonwealth of Pennsylvania to date through no fault of his own. . . . [E]ach hearing offered was a complete or total sham or such decisions were based on cronyism." (*Id.* at ¶ 42). Furthermore, although FCPD and Lukus Defendants "filed no action for child custody . . . they were awarded the same by the state and the action for child support is in fact final after several bogus hearings were held." (*Id.* at ¶ 44). To clarify his claims, in his Objections, Plaintiff argues that in November 2010, Defendant Shifler-Ferraro ceded custody of MCL to Lukus Defendants in the absence of any determination that Plaintiff was an unfit or abusive parent. Plaintiff claims he did not receive an adequate post-deprivation

14

hearing in connection with this "unlawful snatching," or for the resulting garnishment of his wages. (Objections at ¶ 6). Based on these allegations, the Court construes the Amended Complaint liberally and interprets Plaintiff's allegations to assert claims of procedural and substantive due process violations, which the Court would have jurisdiction to hear.[6] *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 171 (3d Cir. 2010) (holding that the plaintiff's claim that the defendants conspired to engineer its defeat in state court did not "assert injury caused by state-court judgments and seek review and rejection of those judgments").

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "The Due Process Clause of the Fourteenth Amendment prohibits the *government* from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process." *Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997) (emphasis added). "While the question of what constitutes due process is necessarily rooted in the circumstances of a given case, it is axiomatic that at least some process is required when a '*state* seeks to alter, terminate, or suspend a parent's right to the custody of [her] minor children.'" *B.S. v. Somerset Cnty.*, 704 F.3d 250,

---

[6] Plaintiff argues that he is asserting an equal protection claim, as well, but it appears to derive from his allegations that he was not afforded due process. Furthermore, the Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992). Plaintiff has not alleged how he was treated differently from persons who were like him in all relevant respects. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008).

271 (3d Cir. 2013) (quoting *McCurdy v. Dodd*, 352 F.3d 820, 827 (3d Cir. 2003)) (emphasis added).

Plaintiff's claim is similar to the facts of *B.S. v. Somerset Cnty.*, 704 F.3d 250, 260 (3d Cir. 2013), except in one key respect. Here, Plaintiff contends that his procedural and substantive due process rights were violated because he did not receive an adequate post-deprivation hearing after Defendant Shifler-Ferraro temporarily transferred physical custody of MCL to Lukus Defendants in November 2010. In *B.S.*, "Mother contend[ed] that Appellees violated both components [of Due Process] when they removed Daughter from her home and transferred the child to Father's custody, and she thus [sought] redress pursuant to 42 U.S.C. § 1983." *B.S.*, 704 F.3d at 260. There, the Third Circuit held:

> The deprivation of a parent's custodial relationship with a child is among the most drastic actions *that a state can take* against an individual's liberty interest, with profound ramifications for the integrity of the family unit and for each member of it. From the parent's perspective, there may be little meaningful difference between instances in which *the state removes* a child and takes her into state custody and those in which *the state shifts custody* from one parent to another, as occurred here. In either case, *the government* has implicated a fundamental liberty interest of the parent who loses custody. The *state has caused a deprivation* and risks having done so wrongly. *See id.* (noting "the risk of an erroneous deprivation" must be considered). Therefore, assuming the "fiscal and administrative burdens," *id.*, of affording such parents a prompt post-removal hearing do not outweigh the need for one—and it is hard to imagine when they would—such a hearing ought to be held.

*Id.* at 272 (emphasis added).

The facts established by the state trial court are that the December 2006 Custody Order granted Defendant Shifler-Ferraro primary custody over MCL. Sometime in 2009,

16

Plaintiff moved to Pittsburgh and in November 2010, Defendant Shifler-Ferraro temporarily transferred physical custody to Lukus Defendants, MCL's paternal grandparents. The Court is unaware of whether Defendant Shifler-Ferraro's decision to temporarily transfer physical custody of MCL to Lukus Defendants was a violation of the December 2006 Custody Order, but what is clear to the Court is that the state was not responsible for this transfer of custody. This is the key difference between this case and *Croft* (on which Plaintiff relies heavily) and *B.S.*, both of which involved government action that deprived the plaintiff-parents of their custodial rights without adequate due process protections.

Thus, Plaintiff cannot establish a *prima facie* § 1983 case, because he has not shown that "the person who deprived him of" his parental rights "acted under color of state law. *Burrella*, 501 F.3d at 139. Because it was not the state which transferred custody of MCL to Lukus Defendants, the state could not have been aware of any constitutional deprivations that would trigger Plaintiff's due process rights or the obligation to afford him a post-deprivation hearing. In fact, the trial court noted that "[t]his arrangement of custody to the paternal grandparents was made as a result of the request of the minor child and the agreement of the Mother in 2009." *G.S.L. v. D.L.S.*, No. 1999-581 CP, at 2 (Susquehanna Cnty. July 16, 2012). A state court already has found that the transfer of custody was initiated by MCL, herself, not by the state. Therefore, the Court concludes that Plaintiff

cannot establish that the *state* violated his due process rights, and will consequently,

overrule Plaintiff's Objections.[7,8]

Furthermore, the filings in this case and the public record belie Plaintiff's claims that

he did not receive adequate hearings in connection with the child custody or child support

determinations. With respect to Plaintiff's allegation that he did not receive an adequate

post-deprivation hearing when MCL began living with her paternal grandparents in

November 2010, Plaintiff filed a custody modification action in January 2011 and received a

hearing in July 2012.[9] At this hearing, the trial court "heard from several witnesses and

considered more than twenty-five exhibits tendered by" Plaintiff before denying Plaintiff's

Motion to Modify Custody. *G.S.L., Jr. v. D.S.L.*, No. 1486 MDA 2012, at 2 (Susquehanna

Cnty. Sept. 4, 2012), *aff'd G.S.L., Jr. v. D.S.L.*, No. 1486 MDA 2012 (Pa. Super. Ct. Mar. 6,

2013).

---

[7] The Court doubts that any of the present defendants is a proper defendant on Plaintiff's due process claims as the duty owed to Plaintiff is by the state, not individual defendants, such as Shifler-Ferraro or Lukus Defendants, or municipal agencies, such as Susquehanna County Children and Youth Services. *See B.S.*, 704 F.3d at 270-75 (discussing the plaintiff's due process claims against Somerset County). Nevertheless, even had Plaintiff sued Susquehanna County, his claims would be dismissed for the reasons set forth above that no state action interfered with his custodial rights.

[8] To the extent that Plaintiff asserts a conspiracy claim under § 1983, this claim also fails for lack of state action. In addition, "[t]o demonstrate the existence of a conspiracy under § 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (quoting *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003)). There are no factual allegations to support an agreement between any defendants to deprive Plaintiff of his constitutional rights under color of law. Because the factual allegations of the Complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has . . . not show[n] that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

[9] Had this case been factually similar to *B.S.* in that the state had removed the child from Plaintiff's custody, he would have been entitled to a hearing much sooner than he received here.

The procedural history of the child support and wage garnishment orders are as follows: on April 12, 2011, the trial court held a hearing on Plaintiff's Preliminary Objections to Lukus Defendant's Complaint for Support, and the next day, it overruled his Preliminary Objections. *Id*. at 2. Thereafter, the trial court issued an Interim Support Order, and on August 2, 2011, Plaintiff filed a Petition for Termination of an Existing Child Support Order. *Id*. at 3. Plaintiff received a hearing on his Petition on August 18, 2011. The hearing Master ultimately filed a Recommendation that Plaintiff pay $450.00 per month in child support, and on March 19, 2012, Plaintiff received a hearing on his exceptions to the Master's recommendation. *Id*. at 4. The trial court denied Plaintiff's exceptions, prompting Plaintiff to appeal to the Superior Court, and his appeal was docketed at No. 769 MDA 2012. *Id*.

In a separate action, Plaintiff filed a petition to strike the related wage garnishment order. He received a hearing on the petition to strike on July 9, 2012, which was denied. *Id*. at 5. Plaintiff then appealed that order to the Superior Court, and this appeal was docketed at No. 1578 MDA 2012. Plaintiff's two appeals were later consolidated. *Id*. Based on this procedural history, Plaintiff clearly received no fewer than four hearings in relation to the child support and wage garnishment orders he challenges.

Plaintiff understandably was unhappy with the outcomes of the child custody and child support hearings, but the Court cannot find that he did not receive adequate process in connection with those determinations.

*D. Constitutionality of 23 Pa. Cons. Stat. § 4341(b)*

19

Finally, Plaintiff argues that "he raised a direct challenge to the constitutionality of" 23

PA. CONS. STAT. § 4341(b), which Judge Mehalchick failed to address. (Supplement at ¶ 2).

23 PA. CONS. STAT. § 4341(b) provides "[a]ny person caring for a child shall have standing to

commence or continue an action for support of that child regardless of whether a court order

has been issued granting that person custody of the child."

First, while Plaintiff may be challenging the constitutionality of 23 PA. CONS. STAT. §

4341(b), Lukus Defendants, the FCPD, and Susquehanna County Defendants are not the

proper defendants for such a claim:

> In *Ex parte Young*, the Supreme Court held that a state official is a proper
> defendant in a suit challenging the constitutionality of a state law if by virtue of
> his office, the official has some connection with the enforcement of the law.
> 209 U .S. 123, 157 (1908). In that case, the state attorney had the authority to
> bring a civil action to enforce an allegedly unconstitutional state law governing
> the setting of railroad transport rates. The Court reasoned that the attorney
> general was the proper defendant because if he brought suit against the
> plaintiff to enforce the allegedly unconstitutional law, he would violate the
> plaintiff's rights. *Id*. at 160-61. Similarly, in *Finberg v. Sullivan*, the Third
> Circuit held that where a state law made the Philadelphia County
> prothonotary and sheriff responsible for enforcing allegedly unconstitutional
> garnishment procedures, the sheriff and prothonotary were proper
> defendants. 634 F.2d 50, 54 (3d Cir. 1980). The Court reasoned that they
> were proper defendants because their enforcement of the allegedly
> unconstitutional procedures caused a violation of plaintiff's rights. *Id.* In
> contrast, the court has held that general authority to enforce a statute is
> insufficient to make government officials the proper parities to litigation
> challenging the laws. *1st Westco Corp. v. School Dist. of Philadelphia*, 6 F.3d
> 108, 113 (3d Cir. 1993) (dismissing the secretary and attorney general where
> the School District, not the Commonwealth officials, had the duty to enforce
> the statutory section at issue).

*Alston v. Parker*, No. Civ. 95-6158, 2007 WL 1349303, at *5 (D.N.J. May 2, 2007).

[R]ecent § 1983 case law supports the proposition that judges, such as those named as defendants in this suit who have not acted in an enforcement capacity by initiating actions against the plaintiffs, are not proper defendants under § 1983. *See, e.g., Grant*, 15 F.3d 146 (9th Cir. 1994) (holding that presiding judge in action to appoint temporary guardian acted as neutral adjudicator and was not proper defendant under § 1983); *Fellows v. Raymond*, 842 F.Supp. 1470 (D. Me. 1994) (holding that judge not proper defendant in case challenging constitutionality of Maine's temporary guardianship statute even where no other state actor available to serve as defendant); *Johnson v. New Jersey*, 869 F.Supp. 289, 295 (D.N.J. 1994) (noting that judge presiding over custody proceeding is not proper party to defend constitutional challenge of law requiring husband but not wife to file affidavit in custody actions).

*Brandon E. ex rel. Listenbee v. Reynolds*, No. Civ. A. 98-4236, 1999 WL 98585, at \*8 (E.D.

Pa. Feb. 25, 1999) *aff'd*, 201 F.3d 194 (3d Cir. 2000); *compare with Brian B. v. Com. of Pa.*

*Dep't of Educ.*, 51 F. Supp. 2d 611, 619 (E.D. Pa. 1999) (finding the Secretary of Education

a proper defendant because "the Pennsylvania General Statutes charge the Secretary of

Education with 'administer[ing] all of the laws of this Commonwealth with regard to the

establishment, maintenance, and conduct of the public schools....' 71 P.S.A. § 352(a).").

The present defendants did not promulgate or enforce the statute; Lukus Defendants

merely asserted the rights afforded to them under it, and the state courts awarded Lukus

Defendants with child support.

Next, Plaintiff cites to *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L.

Ed. 2d 49 (2000) for the proposition that the Pennsylvania statute infringes on his

fundamental rights as a parent to make decisions as to the "care, custody, and control of"

his child. In *Troxel*, the Supreme Court affirmed the order of the Washington Supreme Court

21

which held a state statute that allowed a court to "order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances." *Id.* at 61 (citing Wash. Rev. Code § 26.10.160(3) (1994)). In affirming the Washington State Supreme Court's determination that the "statute sweeps too broadly," the U.S. Supreme Court held that

> The Washington nonparental visitation statute is breathtakingly broad. According to the statute's text, "[a]ny person may petition the court for visitation rights at any time," and the court may grant such visitation rights whenever "visitation may serve the best interest of the child." § 26.10.160(3) (emphases added). That language effectively permits any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review.

*Id.* at 63, 67.

Separately, the Washington statute also conferred standing on "[a]ny person" to "petition the court for visitation rights at any time including, but not limited to, custody proceedings." The Washington Supreme Court had held that "the plain language of § 26.10.160(3) gave the Troxels standing to seek visitation, irrespective of whether a custody action was pending." *Id.* at 62-63 (internal citations omitted). The U.S. Supreme Court did not address the issue of standing, and thus, the Washington Supreme Court's determination that the standing provision was valid, was final.

Similarly, the Pennsylvania statute at issue here deals with a party's standing only. It does not confer any additional rights on a party as the Washington statute did. Furthermore, it does not deal with *custody* of a child but *support* for a child, filed by either the custodial

22

parent or one who is currently caring for a child. Because the statute confers only standing

on a party to seek child support, it does not necessarily impair Plaintiff's rights as a parent

as to the "care, custody, and control of" his child. Therefore, *Troxel* is inapplicable to this

situation.

Finally, in the underlying state court child support action, the Pennsylvania Superior

Court approved of Lukus Defendants' assertion of rights under 23 PA. CONS. STAT. §

4341(b) as follows:

"Father complains Grandmother usurped his parental role due to the circumstances

under which she obtained custody of Child. Specifically, Father claims Mother essentially

'dumped' Child at Grandmother's residence, relinquished her custodial rights, and entered

into a unilateral contract to transfer her custody rights to Grandmother." *C.L. v. G.S.L., Jr.*,

No. 769 MDA 2012, at 8, No. 1578 MDA 2012, at 8 (Pa. Super. Ct. April 24, 2013).

> Significantly, a support action can be brought "on behalf of a minor child by a person caring for the child regardless of whether a court order has been issued granting that person custody of the child. . . ." Pa. R.C.P. 1910.3(a)(3). A third party can pursue an action for child support against a parent if the third party has incurred financial obligations on behalf of the child, which unquestionably belong to the parent. 23 Pa. C.S.A. § 4341(b).

*Id.* at 9-10.

> Pursuant to an agreement between Mother and Grandmother, Child has remained in Grandmother's custody. Grandmother has consistently provided for Child's custodial needs, even without any court order formally granting custody to Grandmother. Thus, Grandmother properly brought this support action on Child's behalf. See Pa. R.C.P. 1910.3(a)(3); 23 Pa. C.S.A. § 4341(b). Contrary to Father's arguments, the record fails to demonstrate that Grandmother usurped Father's parental role. Rather, Grandmother made

23

herself available as a custodial resource after Child's relationship with Mother deteriorated. Under these circumstances, the court correctly awarded child support to Grandmother.

*Id.* at 11. While not an analysis of the statute's constitutionality, the above discussion by the Superior Court casts further doubts on Plaintiff's insistence that this statute is unconstitutional.[10]

Thus, at this time, the Court will overrule Plaintiff's Objection to the R&R on the basis that 23 PA. CONS. STAT. § 4341(b) is unconstitutional.

### E. Defendants Shifler-Ferraro and Christine Lukus

A review of the docket shows that neither Desiree Shifler-Ferraro nor Christine Lukus has an attorney who has entered an appearance on her behalf. Also, neither has filed a motion to dismiss Plaintiff's Amended Complaint. Nonetheless, for the same reasons that the moving defendants' motions to dismiss were granted, Defendants Shifler-Ferraro and Christine Lukus would also be entitled to dismissal on the grounds of the *Rooker-Feldman* doctrine and the absence of state action.

As the Third Circuit has held, "a district court may *sua sponte* raise the issue of the deficiency of a complaint under Rule 12(b)(6), so long as the plaintiff is accorded an opportunity to respond." *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 256, n.14 (3d Cir. 2010) (internal citations and quotation marks omitted). Plaintiff is on notice that

---

[10] Plaintiff's allegations against Susquehanna County Defendants are primarily that they encouraged or assisted Lukus Defendants in efforts to secure child support from him and then illegally garnished his wages. As discussed in the Memorandum Opinion, Plaintiff received several hearings in connection with his child custody and child support cases, and the undisputed facts show that Lukus Defendants initiated the child support case while Plaintiff initiated the custody modification case. Thus, there are no allegations that would subject Susquehanna County Defendants to legal liability.

the Court is considering dismissing Defendants Shifler-Ferraro and Christine Lukus *sua sponte* for the reasons set forth above, but Plaintiff will have an opportunity to respond before the Court dismisses these two remaining defendants.

## IV. Conclusion

For the foregoing reasons, the Court will adopt the R&R (Doc. 127) and grant the Motions to Dismiss Amended Complaint filed by Defendant Paul Lukus, Forest City Police Department, and Susquehanna County Defendants (Doc. 106, Doc. 107, Doc. 122). The Court further adopts the portion of the R&R that recommends denying leave to amend for a second time, as such amendment would be futile. A separate Order follows.

Robert D. Mariani
United States District Judge